DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Mary Lou Stein and Robert G. Stein, appeal from the judgment of the Summit County Court of Common Pleas, that granted the motion for summary judgment of Appellee, The Honeybaked Ham Company. We affirm.
 I. {¶ 2} Appellee owned and operated a retail store located at 301 West Market Street, in Akron, Ohio, in Summit County. A sidewalk on the front and sides of the building surrounded the store, and adjacent to the sidewalk was a combination driveway/parking lot. Listed on the door on the front side of the building were the store's business hours. On the right side of the building, there was a sloped handicap ramp that lead from the sidewalk to the parking lot. In December 2002, Appellee's employees maintained the sidewalks and ramps, shoveling snow and placing white ice melt pellets in the area.
 {¶ 3} At around seven o'clock in the morning on December 24, 2002, Appellants went to Appellee's store on West Market Street to pick up an order placed by Appellants' daughter. The parking lot was empty, and the store had not yet opened, although some lights were illuminated in the store. The weather was clear and dry, and it was not raining or snowing at the time. Because the store had not yet opened, Mrs. Stein pulled her car up to the side of the store, stepped out of her car up to the curb of the sidewalk, and walked up to the front door to read the store's hours. After viewing the hours, Mrs. Stein returned to her car, but chose a different path than that which she used to the front door; this time, Mrs. Stein used the ramp on the side of the store to reach her car. However, Mrs. Stein stepped on a "marble-like substance" on the ramp, "lost control of [her] body," and fell on the ramp and sustained injuries, including a fractured right elbow.
 {¶ 4} On December 17, 2004, Appellants filed a complaint asserting negligence/premises liability and loss of consortium against Appellee. Appellants asserted that the ramp was in an unreasonably dangerous condition due to its design and construction; and that these design and construction "defects," along with an alleged excessive amount of ice melt pellets on the ramp, proximately caused Mrs. Stein to fall. Appellee filed an answer, as well as a motion for summary judgment, appending transcripts of deposition testimony of Mr. and Mrs. Stein. In its motion, Appellee argued that it was entitled to judgment as a matter of law because Appellants could not identify the actual cause of Mrs. Stein's fall and the salted ramp was not a latent danger for which there was a duty to warn or protect. Appellants responded to the motion, appending Mrs. Stein's answers to Appellants' first request for admissions, an affidavit of Appellants' hired expert, Stanley E. Martin, and Appellants' deposition transcripts. Appellants also filed transcripts of the deposition testimony of employees of Appellee, Jennifer Crum, David C. Riemund, and Mark Jenkins. Appellee filed a reply brief.
 {¶ 5} In a judgment dated September 7, 2005, the trial court granted Appellee's motion. The court read confusion into Mrs. Stein's statements regarding the exact cause of her fall, noting that "[t]here is some question as to whether Plaintiff has actually identified any cause for her fall. Although she has testified that the cause of her fall was the `marble-like substance,' she has not identified what this `marble-like' substance actually was." Ultimately, the court found that the cause of Mrs. Stein's fall was "the `marble-like substance' or ice melt on the sidewalks and handicap ramp at the Defendant's store location," and not the ramp itself. However, the court did conclude that even if the slope of the ramp contributed to Mrs. Stein's fall, the ramp was an open and obvious danger that obviated a duty on Appellee's part. The trial court also concluded that the ice melt pellets by themselves were an open and obvious danger that obviated any duty on Appellee's part to warn or correct the condition. This appeal followed.
 {¶ 6} Appellants timely appealed, asserting two assignments of error for review. We address Appellants' assignments of error together to facilitate review.
 II. First Assignment of Error
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE PROPERTY OWNER, DEFENDANT-APPELLEE HONEYBAKED HAM COMPANY, BY FINDING THE RECORD BEFORE THE COURT CONTAINED NO GENUINE ISSUES AS TO ANY MATERIAL FACT THAT THE HONEYBAKED HAM PREMISES CONTAINED AN UNSAFE CONDITION DUE TO A LATENT DEFECT ON THE RAMP WHICH CAUSED PLAINTIFF-APPELLANT MRS. STEIN STEIN TO FALL."
 Second Assignment of Error
"THE TRIAL COURT ERRED IN DETERMINING THAT THE OPEN AND OBVIOUS DOCTRINE APPLIED TO PRECLUDE PLAINTIFFS-APPELLANTS' CLAIMS FOR DAMAGES."
 {¶ 7} In their first assignment of error, Appellants contend that the trial court erred when it concluded that Appellants failed to establish that a genuine issue of material fact remained as to any unsafe conditions or latent defects on the ramp. In their second assignment of error, Appellants contend that the trial court's conclusion, that the open and obvious doctrine applied to preclude recovery, was in error. We disagree with both contentions.
 {¶ 8} An appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996-Ohio-336; Klingshirn v. Westview Concrete Corp.
(1996), 113 Ohio App.3d 178, 180. Any doubt is to be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of the motion. Id.
 {¶ 9} Once this burden is satisfied, the non-moving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but must instead point to or submit some evidentiary material which shows a genuine dispute over the material facts exists. Id.; Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735. In its review of a grant of summary judgment, an appellate court "review[s] the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." Am. Energy Servs., Inc. v. Lekan (1992),75 Ohio App.3d 205, 208.
 {¶ 10} To establish a claim of negligence in Ohio, a plaintiff must show the existence of a duty, a breach of that duty, and injury directly and proximately resulting from a breach of that duty. Menifee v. Ohio Welding Prods., Inc. (1984),15 Ohio St.3d 75, 77, citing Di Gildo v. Caponi (1969),18 Ohio St.2d 125, 127, and Feldman v. Howard (1967),10 Ohio St.2d 189, 193. The existence of a duty is crucial to establishing a claim for negligence; without a duty, legal liability cannot exist. Plant v. Bd. of Cty. Comms. (Dec. 13, 2000), 9th Dist. No. 00CA0010, at *3, citing Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142, and Feichtner v. Cleveland (1994),95 Ohio App.3d 388, 394. The inquiry into the existence of a duty is a question of law for the court. Andamasaris v. Annunciation GreekOrthodox Church, 9th Dist. No. 22191, 2005-Ohio-475, at ¶ 11, citing Mussivand v. David (1989), 45 Ohio St.3d 314, 318.
 {¶ 11} It is uncontested that Mrs. Stein was a business invitee in relation to Appellee. We note at the outset that the fact that an invitee falls while on the premises does not induce a presumption of negligence on the owner's part. Parras v. Std.Oil Co. (1953), 160 Ohio St. 315, paragraph one of the syllabus. A premises owner is not an insurer of the safety of a business invitee. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203, 203, citing Sidle v. Humphrey (1968),13 Ohio St.2d 45, paragraph one of the syllabus. Nevertheless, an owner does owe a business invitee a duty of reasonable care to maintain the premises in a reasonably safe condition and to warn her of unreasonably dangerous and latent conditions or remedy any unreasonable dangers that the owner actually knows about or that he or she should know about in the exercise of reasonable care.Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, at ¶ 5, citing Paschal, 18 Ohio St.3d at 203. This duty includes the responsibility to provide a reasonably safe ingress and egress. Bozzelli v. Brucorp (Oct. 30, 1996), 9th Dist. No. 17886, at *2.
 {¶ 12} A latent danger is "a danger which is hidden, concealed and not discoverable by ordinary inspection, that is, not appearing on the face of a thing and not discernible by examination." Potts v. Smith Constr. Co. (1970),23 Ohio App.2d 144, 148. Furthermore, this Court has recognized in the past that a landowner will not be liable for insubstantial defects on premises that are commonly encountered, are to be expected, and are not unreasonably dangerous. Goodwill Indus. v. Sutcliffe
(Sept. 13, 2000), 9th Dist. No. 19972, at *2, citing Raflo v.Losantiville Country Club (1973), 34 Ohio St.2d 1, 4. See, also,Shepherd v. Mt. Carmel Health (Dec. 2, 1999), 10th Dist. No. 99AP-197, at *2 ("Premises are not considered unreasonably dangerous where the defect is `so insubstantial and of the type that passersby commonly encounter.'").
 {¶ 13} However, the open-and-obvious doctrine, which concerns the first element of negligence law, the existence of a duty, provides that a premises owner owes no duty to a person who enters upon the premises with respect to open and obvious dangers, when the conditions are so obvious that a person may be expected to discover them and protect himself or herself against the conditions. Armstrong at ¶ 14; Sidle,13 Ohio St.2d at 48. "`Where the hazard is not hidden from view or concealed and is discoverable by ordinary inspection, the court may properly sustain a summary judgment against the claimant.'" Smock v. BobEvans Farms, Inc., 9th Dist. No. 02CA008075, 2003-Ohio-832, at ¶ 11, quoting Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49,50-51.
 {¶ 14} Appellants argue that the trial court improperly discounted the expert testimony of an architect, Stanley Martin. Mr. Martin stated in an affidavit that on July 12, 2005, he inspected the accident site and took measurements of the ramp, and that it was his opinion that the ramp design and construction violated building code requirements in place at the time the ramp was designed and constructed in 1987.[1] Specifically, Mr. Martin stated that the main slope of the ramp was 7.36 degrees and exceeded the maximum slope allowed by 154%. Mr. Martin concluded in his affidavit that "[t]he unsafe design and construction of the ramp in combination with the ice melt caused an unusually risky condition which caused Mrs. Stein to fall."
 {¶ 15} Appellants maintain that it was improper for the trial court to reject Mr. Martin's opinion regarding the actual cause of Mrs. Stein's fall. We note that Civ.R. 56(E) requires that an affidavit be made on personal knowledge, a requirement that this Court has specifically acknowledged and demanded. See Dunigan v.State Farm Mut. Auto. Ins. Co., 9th Dist. No. 03CA008283,2003-Ohio-6454, at ¶ 10, 19. Since Mr. Martin did not witness Mrs. Stein's fall, his statements regarding the cause of her fall may not pass muster under summary judgment affidavit requirements. However, our current discussion focuses on the duty element of a negligence claim, and therefore, evidence as to causation is not relevant at this juncture.
 {¶ 16} As to the assertion that the slope of the ramp exceeded the maximum slope allowed by applicable building codes, we note that a violation of a building code does not constitute negligence per se and is not conclusive proof of a party's negligence. Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 568. Rather, evidence of a code violation may be taken into consideration along with all other materials correctly submitted pursuant to Civ.R. 56(E) in order to determine whether a party was negligent. Id. Additionally, we observe that Mr. Martin does not conclude in his affidavit what specific Ohio Basic Building Code sections the ramp violates. Instead, Mr. Martin makes the blanket statement that the ramp "violates building code requirements" and instead links the purported defects to violations of sections of the "ANSI," which we presume from other information in the affidavit refers to the "American National Standard A117.1." However, Appellants did not include a copy of these specific ANSI sections in its response to the summary judgment motion. More importantly, however, Mr. Martin does not explain the significance of these "standards" to the determination of actual building code violations.
 {¶ 17} Appellants maintained that the "defect" in the ramp was so latent that Appellee was under a duty to warn or protect her from the ramp. This Court has held that the slope of a wheelchair accessibility ramp poses an open and obvious danger that an invitee may reasonably be expected to protect against any attendant danger, and which obviates the duty to warn or protect invitees. Demos v. Toys "R" Us, Inc. (July 5, 2000), 9th Dist. No. 99CA007404, at *3, citing LeJeune v. Crocker Shell Food Mart Car Wash (Oct. 22, 1998), 8th Dist. No. 74262, at *3 ("[B]y definition, a wheelchair ramp is constructed and designed in order to afford access to those unable to negotiate a curb between a parking lot and an elevated sidewalk adjacent to it. The ramp is necessarily inclined to gradually meet this existing change in height.").
 {¶ 18} Mrs. Stein maintained that it was dark outside when she got to Appellee's store. She did not recall whether the lights in front of the store were lit, but did state that the lights inside the store were lit. Furthermore, Mrs. Stein testified, that, although she did not use the ramp on her way to the front door of Appellee's store, she did notice the ramp and knew it was to the left of her car. While she testified that the lights were not lit by the entrance to the store, Mrs. Stein did not indicate that her view of the ramp was obstructed in any way, or that the weather conditions obstructed her view. Mr. Stein testified that it was "dusky" and that there was sufficient light to see where one was walking. Even viewing the circumstances in the light most favorable to Appellants, we must find that the ramp and its slope were an open and obvious danger, a condition that one could be reasonably expected to guard against. SeeArmstrong at ¶ 14. See, also, Ryan v. Guan, 5th Dist. No. 2003CA00110, 2004-Ohio-4032, at ¶ 12 (finding "the hazard presented by the slope was open and obvious, even though the exact degree of the slope was unknown. Business invitees entering the premises could ascertain the ramp was sloped; therefore, the danger was open and obvious").
 {¶ 19} Appellants not only maintain that the defect was latent, but also insist that the defect was so "unusual and significant" that it constituted an unreasonably unsafe condition that required warning. In Raflo v. Losantiville Country Club
(1973), 34 Ohio St.2d 1, the plaintiff fell on an exit doorstep that violated building code regulations. The Ohio Supreme Court rejected the plaintiff's argument that the "the defect, clearly and continuously visible when entering, did not become apparent upon exiting." Id. at 4. The Court stated emphatically that it would not allow a party to minimize the doctrine of "known peril" by "attempt[ing] to designate a defect as insubstantial for the purpose of notice upon entering but substantial for the purpose of imposing liability for a fall upon exiting." Id. The Court ultimately held that "one traversing such a defect upon entering a building cannot take the position that it was at that time so insubstantial as to go unnoticed, but became unreasonably dangerous, hence actionable, when injuries were occasioned by it upon exiting shortly thereafter." Id. Following this reasoning, Appellants in this case impermissibly attempt to categorize the ramp as both a latent, unnoticed defect and one that suddenly became unreasonably dangerous upon returning to her car. Mrs. Stein admitted that she saw the ramp, and inherent in this is the observation of the sloping nature of the ramp.
 {¶ 20} Mrs. Stein maintained that she did not see any ice melt pellets on the ramp or sidewalk, but conceded that there may have been some on the ground. She explained that she felt a "marble-like substance" under her feet when she fell. However, she stated that the substance could have been salt. Mr. Stein stated that when he came to her rescue, he saw ice melt pellets strewn all over the ramp floor. An office note from Mrs. Stein's treating physician states that Mrs. Stein fell and slipped on salt on a cement walkway. On appeal, Mrs. Stein essentially admits that the substance was salt by her contention that the sloped ramp in conjunction with the ice melt pellets caused her fall. We find that ice melt pellets on a handicap ramp, at the end of December in Akron, Ohio do not constitute a latent danger giving rise to a duty to warn or protect; rather, these pellets are an open and obvious condition on a ramp. See Shepherd, at *2 ("there is no evidence that ice melt pellets on the sidewalk in January in Columbus, Ohio constitute a latent danger but, rather, ice melt pellets in January, constitute a commonly encountered substance"). Therefore, we do not agree with Appellants' assertion in their second assignment of error that the open and obvious doctrine does not apply to obviate the duty to warn or protect against the condition.
 {¶ 21} While Appellant recollected that the weather on that early morning Christmas Eve day was dry, Appellee noted that snow had fallen several days prior to that day. It is well established that dangers arising from natural accumulations of ice and snow are treated as open and obvious. See Sidle,13 Ohio St.2d at 49. In this case, Appellee's employees dutifully applied the ice melt pellets to the sidewalks and ramp surrounding the store, in order to protect invitees from any accumulations of ice, whether natural or unnatural; and these ice melt pellets may have naturally remained after the snowfall. Ice melt pellets are a commonly encountered substance, are to be expected, and are certainly not unreasonably dangerous, in this area in the middle of winter, whether it has snowed on that particular day or not. See Goodwill Indus., at *2. See, also, Cunningham v. ThackerServs., Inc., 10th Dist. No. 03AP-455, 2003-Ohio-6065, at ¶ 14 ("Salting or shoveling does not turn a natural accumulation into an unnatural accumulation [for which a duty would arise]; moreover, it is unwise as a matter of public policy to punish business owners who, as a courtesy, attempt to maintain safe sidewalks.").
 {¶ 22} Based upon the foregoing, and even viewing the evidence in the light most favorable to Appellants, we find that reasonable minds can come but to one conclusion, that the ramp with ice melt pellets in this case was an open and obvious danger, and that therefore, Appellee had no duty to Appellants in this case. Thus, Appellants' negligence action fails as a matter of law. See Menifee, 15 Ohio St.3d at 77; Plant, supra. Therefore, Appellee was entitled to summary judgment as a matter of law. See Temple, 50 Ohio St.2d at 327. This Court finds that the trial court did not err when it granted summary judgment in favor of Appellee. Accordingly, Appellants' first and second assignments of error are overruled.
 III. {¶ 23} Appellants' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Slaby, P.J. concurs.
[1] Mr. Martin does not comment on the ramp's compliance with building code specifications in effect at the time Mrs. Stein fell on the ramp.