[Cite as *Jackson v. Akron Summit Cty. Library*, 2017-Ohio-9298.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

BETTY JACKSON

    Appellant

    v.

AKRON SUMMIT COUNTY LIBRARY

    Appellee

C.A. No.    28474

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2015-09-4229

DECISION AND JOURNAL ENTRY

Dated: December 29, 2017

HENSAL, Presiding Judge.

{¶1} Betty Jackson appeals from the judgment of the Summit County Court of Common Pleas, granting summary judgment to Akron Summit County Public Library. We affirm.

I.

{¶2} This appeal stems from a refiled action wherein Betty Jackson sued the Akron Summit County Public Library (the "Library") for compensatory damages related to injuries she sustained after tripping and falling on concrete outside of the Highland Square Branch Library.

{¶3} According to Ms. Jackson, she went to the Highland Square Branch Library to use the Internet for her job. At her deposition, Ms. Jackson testified that she entered the library without incident and did not observe any hazards. She then exited the library through the same set of doors that she used upon entering, indicating that nothing obstructed the view in front of her. After taking several steps, she fell onto the concrete. Ms. Jackson testified that she did not

know the cause of her fall. There was no dispute, however, that concrete slabs near where Ms. Jackson fell had "heaved," thereby creating a roughly one-inch "ridge or lip" between the slabs, and that the branch manager had submitted a work order prior to Ms. Jackson's fall indicating that the heaved concrete posed a potential tripping hazard. There was also no dispute that an orange cone was placed outside of the Highland Square Branch Library's entrance prior to Ms. Jackson's fall.

{¶4} The Library moved for summary judgment, arguing that: (1) it was entitled to political-subdivision immunity under Revised Code Section 2744; (2) Ms. Jackson could not establish negligence because she could not identify the cause of her fall; (3) any height differential between the concrete slabs that Ms. Jackson allegedly tripped over constituted a trivial defect; and (4) any height differential between the concrete slabs that Ms. Jackson allegedly tripped over was an open-and-obvious hazard.

{¶5} In response, Ms. Jackson argued that: (1) the Library acted recklessly, wantonly, negligently, and willfully by not repairing the discrepancy in the concrete slab levels, by not warning patrons, and/or by not temporarily closing the Highland Square Branch Library while awaiting a repair; (2) other information that she became aware of subsequent to her deposition – including expert reports and surveillance video showing her fall – proved that the heaved concrete caused her fall[1]; (3) she was an invitee, not a licensee, for purposes of establishing the

---

[1] The Library argues that an errata sheet Ms. Jackson filed in her previous lawsuit (i.e., not the refiled action from which Ms. Jackson has appealed) against the Library should be stricken from the record because it contradicts her deposition testimony. According to the Library, Ms. Jackson's errata sheet identifies the uneven concrete slabs as the cause of her fall. That errata sheet, however, is not part of the record before this Court. Accordingly, it cannot be considered for purposes of this Court's disposition of Ms. Jackson's appeal. The Library also argues that this Court should strike other items from the record, including Ms. Jackson's affidavit wherein she averred that she observed an orange cone "on the walkway alongside the turn-off driveway" (as opposed to the orange cone positioned near the library's entrance), and an

applicable duty of care; (4) the Library wrongfully caused and permitted the physical defect to remain in violation of Section 2744.02(B)(4); (5) no defenses to immunity under Section 2744.03 applied; and (6) the hazard was unlikely to be seen by someone entering the library because the raised "ridge or lip" faced the library and, upon exiting, the two sets of glass doors and the orange cone would have made it difficult for someone to see the raised concrete. Ms. Jackson also argued that a "significant height difference" existed between the concrete slabs, which created "a hidden danger."

{¶6} The trial court granted the Library's motion, holding that the height differential between the concrete slabs was "observable[.]" It, therefore, held that the Library did not owe Ms. Jackson a duty of care, and further held that no exception to political-subdivision immunity applied. Ms. Jackson now appeals, raising one assignment of error for our review.

II.

ASSIGNMENT OF ERROR

\* \* \* THE TRIAL COURT ERRED BY GRANTING THE DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶7} In her assignment of error, Ms. Jackson argues that the trial court erred by granting summary judgment to the Library. Ms. Jackson makes several assertions in support of her position. To summarize, she asserts that: (1) the hazard was not a minor defect; (2) the orange cone placed outside of the library could have drawn someone's attention away from the hazard, as opposed to serving as a warning; (3) a dog that a library patron tethered to a bench outside would have been a distraction; (4) "experience and survival genetics" causes people to

amended expert report wherein her expert opined that the Library acted wantonly and recklessly by failing to maintain the walkway. Given the record before this Court, neither the location of the orange cone, nor Ms. Jackson's expert's opinion, affects this Court's analysis.

look forward while entering public doorways to prevent colliding with others, which is "probably something that should be considered both as an attenuating circumstance and as part of the mental framework of a human being"; (5) the Library had a duty to warn her of the hazard; (6) the height differential between the concrete slabs was not an open-and-obvious hazard; (7) attendant circumstances existed; (8) the trial court improperly substituted the word "[o]bservable" for "[o]pen and obvious"; and (9) the library's two sets of glass automatic doors negatively impacted her ability to see the hazard.

{¶8} This Court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} "The moving party bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Byrd*, 9th Dist. Summit No. 27280, 2014-Ohio-3704, ¶ 7, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). "If the moving party meets this burden, then the non-moving party bears the burden to offer specific facts demonstrating a genuine issue for trial." *Id.*, citing *Dresher* at 292-293.

{¶10} As previously noted, the Library argued that it was entitled to summary judgment on the basis of immunity under Revised Code Chapter 2744. With respect to political-subdivision immunity, the Ohio Supreme Court has stated:

R.C. Chapter 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability. First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.

*Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557 (2000).

{¶11} Here, there is no dispute that the Library satisfied the first tier of the analysis, that is, that it is a political subdivision carrying out a governmental function. *See* R.C. 2744.01(C)(2)(d) (providing that a "free public library system" is a "governmental function"). Regarding the second tier, the only potentially applicable exception to general immunity is Section 2744.02(B)(4), which provides, in relevant part, that:

political subdivisions are liable for injury * * * to [a] person * * * that is caused by the *negligence* of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *.

(Emphasis added.)

{¶12} Even assuming that the height differential between the concrete slabs constituted a "physical defect[]" for purposes of this Section, Ms. Jackson was still required to establish that a genuine issue of material fact existed as to whether the Library employees acted negligently. "To establish a claim of negligence in Ohio, a plaintiff must show the existence of a duty, a breach of that duty, and injury directly and proximately resulting from a breach of that duty." *Stein v. Honeybaked Ham Co.*, 9th Dist. Summit No. 22904, 2006-Ohio-1490, ¶ 10.

{¶13} Importantly, "[t]he existence of a duty is crucial to establishing a claim for negligence; without a duty, legal liability cannot exist." *Id.* Relevantly, "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus. "The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning[,]" and, thus, "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). The doctrine, therefore, "acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5.

{¶14} As previously noted, the trial court found that the height differential between the concrete slabs was "observable[.]" Although Ms. Jackson takes issue with the trial court's use of the term "observable," this Court has stated that the determinative issue as to whether a hazard is open and obvious is "whether the condition is observable[,]" regardless of whether the plaintiff actually observed the hazard. *Baker v. Bob Evans Farms, Inc.*, 9th Dist. Wayne No. 13CA0023, 2014-Ohio-2850, ¶ 11, quoting *Kirksey v. Summit Cty. Parking Deck*, 9th Dist. Summit No. 22755, 2005–Ohio–6742, ¶ 11; *McQuown v. Coventry Twp.*, 9th Dist. Summit No. 28202, 2017-Ohio-7151, ¶ 28 ("Our inquiry on this point is an objective one and the fact that a plaintiff was unaware of the hazard is not dispositive.").

{¶15} "When considering whether a danger is observable, a court must look to the totality of the circumstances, considering 'both the nature of the dangerous condition and any attendant circumstances that may have existed at the time of the injury.'" *Baker* at ¶ 11, quoting *Gehm v. Tri–County, Inc.*, 9th Dist. Lorain No. 09CA009693, 2010–Ohio–1080, ¶ 8. "While there is no precise definition of attendant circumstances, they would include 'any distraction that

would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time.'" *Jenks v. City of Barberton*, 9th Dist. Summit No. 22300, 2005-Ohio-995, ¶ 16, quoting *McLain v. Equitable Life Assurance Co. of the United States*, 1st Dist. Hamilton No. C-950048, 1996 Ohio App. LEXIS 926, *14 (Mar. 13, 1996). "The attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall." *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 33 (2d Dist.1994).

{¶16} Here, Ms. Jackson testified that she did not notice a hazard as she entered the library. She testified that as she exited the library, she "[j]ust s[aw] cars, [was] looking around, just seeing people going by on the streets and then [she] kind of looked where [she] was going and that's all." She then testified that nothing had obstructed her view. Notably, in her summary-judgment briefing, Ms. Jackson described the height differential between the two concrete slabs as "significant[.]"

{¶17} Despite arguing that: (1) the orange cone could have drawn someone's attention away from the hazard; (2) a dog that a library patron tethered to a bench outside of the library would have been a distraction; and (3) "experience and survival genetics" causes people to look forward while entering public doorways to prevent colliding with others, no evidence in the record – including Ms. Jackson's own deposition testimony – indicates that Ms. Jackson was actually distracted by the orange cone, the dog, or other library patrons entering and exiting the library. Indeed, she testified that nothing obstructed her view as she entered and exited the library, and that she was simply "looking around[.]"

{¶18} Having reviewed the record, we cannot say that Ms. Jackson met her reciprocal burden of offering specific facts demonstrating a genuine issue for trial with respect to the open-

and-obvious nature of the hazard. *See Dresher*, 75 Ohio St.3d 280, at 293 (1996). Because the open-and-obvious nature of a hazard "acts as a complete bar to any negligence claims[,]" we hold that the trial court properly granted summary judgment in favor of the Library. *Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 5. Ms. Jackson's assignment of error is overruled.

III.

{¶19} Betty Jackson's assignment of error is overruled. The Judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

RUSSELL SMITH, Attorney at Law, for Appellant.

JAMES T. REAGAN, Attorney at Law, for Appellee.